## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ZACHARY BAGBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 15-1134-KHV** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Zachary Bagby appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401, et seq. For the reasons set forth below, the Court finds that the final decision of the Commissioner should be reversed and remanded for further proceedings.

### Procedural Background

On November 15, 2011, plaintiff filed an application for disability insurance benefits, claiming disability from April 1, 2010 to December 31, 2011, the last date plaintiff was insured for disability insurance benefits. Initially and on reconsideration his claim was denied. At plaintiff's request an administrative law judge ("ALJ") held a hearing on October 25, 2013. On November 5, 2013, the ALJ determined that plaintiff was not disabled before December 31, 2011. Plaintiff requested Appeals Council review. The Appeals Council denied plaintiff's request. Plaintiff now appeals to this Court.

### Standard of Review

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009);

see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052 (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

**Factual Background**

The following is a brief summary of the record.

Plaintiff was born August 9, 1983. He claims disability beginning on April 1, 2010 because of Post Traumatic Stress Disorder ("PTSD"), knee pain, migraines, tinnitus, degenerative joint disease and traumatic brain injury. Plaintiff did not engage in substantial gainful activity from April 1, 2010 to December 31, 2011.

**I.     Medical Evidence**

Plaintiff is 5'8" tall and weighed between 215 and 330 pounds during the relevant period. Tr. 62-63. In December of 2006, plaintiff was diagnosed with PTSD, depression, panic disorder and alcohol abuse.

From December of 2006 throughout the rest of the relevant period, plaintiff continued to report symptoms of PTSD. Tr. 538-39, 704, 707, 709, 892, 1149. He reported trouble sleeping, nightmares, panic attacks, intrusive thoughts and depression. Tr. 910, 928, 1086, 1097-98, 1100-01.

He also reported difficulty concentrating.  Tr. 535, 664.  He cut himself on a number of occasions.  Tr. 609, 889, 1109-10.  He abused alcohol, but has been sober since April of 2010.  Tr. 62, 76, 539-40, 1129, 1194.  He sought treatment for intractable headaches.  Tr. 1870, 1848.  He twice sought treatment for lateral meniscus tears to his right knee and once sought treatment for a fractured right ankle.  Tr. 671-72, 1445, 2030.  On March 5, 2008, plaintiff was diagnosed with traumatic brain injury.  Tr. 699.  He was assessed again later that year and found to have deficits in higher-level cognitive processing.  Tr. 655.

## II.    Plaintiff's Testimony

Plaintiff testified that he takes care of his personal grooming, prepares his own meals, does his own dishes, cleans his own house, takes out his own garbage and performs his own yard work.  Tr. 81-82.  Plaintiff spends up to four hours per day on the computer.  Tr. 82.  He exercises about two-and-a-half hours each day and has lost nearly 100 pounds through diet and exercise.  Tr. 63.

Plaintiff has difficulty sleeping and has nightmares several times a month.  Tr. 88.  He has anxiety around others, struggles with anger and has flashbacks.  Tr. 87, 88, 90.  Plaintiff also has trouble with memory, concentration and completing tasks.  Tr. 87-90.

Plaintiff experiences constant and bothersome right knee pain, but he is able to stand for two hours at a time, walk a few miles and sit for 30 minutes at a time.  He has no problems with his hands.  Tr. 79-81.

Plaintiff testified that he has been attending college to gain exposure to other people.  Tr. 63-64.  At the time of the hearing before the ALJ, he had cut his course load from seven or eight classes to just one, a Latin course.  Tr. 64-65.  Plaintiff was struggling with the Latin course; he testified that it took him eight to nine hours to do his homework.  Tr. 65.

Plaintiff testified that he sees his brother three to four times a week and sees a friend about

once a month.  Tr. 83.  Plaintiff attends church every day, sees movies occasionally and goes out to eat once or twice a month.  Tr. 83-84.  He drives 50 to 100 miles each week and has traveled to Oklahoma and the Ozarks several times.  Tr. 81; 84; 86.

His finances are handled by a fiduciary because Veterans Affairs has found him incompetent to handle his own affairs.  Tr. 55.

### III.  Medical Expert Opinion

In March of 2012, two state agency psychologists, Dr. Robert Blum and Dr. Stanley Hutson, evaluated plaintiff's limitations.  Tr. 97-109, 2011.  Dr. Hutson found moderate limitations in eight areas of mental functioning, including interacting with the public and concentration and persistence. Tr. 2011-12.  Dr. Blum opined that plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods.  Tr. 107.

Plaintiff's treating psychologist, Dr. Thomas Demark, opined that plaintiff had moderate limitations in ten areas of mental functioning, including understanding, remembering and carrying out very short and simple instructions.  Tr. 2179-80.  Dr. Demark also found marked limitations in ten areas of mental functioning, including plaintiff's ability to interact appropriately with the general public, to work with others without being distracted and to maintain attention and concentration for extended periods.  Tr. 2179-80.

### IV.  Vocational Expert Testimony

The ALJ asked the vocational expert about the work opportunities for a person who can perform limited to medium work; can occasionally climb ramps or stairs; who can never climb ladders, ropes or scaffolds; can frequently balance; who can frequently stoop; who can occasionally kneel; can frequently crouch; can never crawl; is limited to simple, routine and repetitive tasks; can use judgment consistent with simple work-related decisions; can deal with simple work-related

decisions; can deal with changes in a work setting; can have no more than occasional interaction with supervisors or coworkers; and can never work with the public. Tr. 90-91. The vocational expert testified that someone with that residual functional capacity and plaintiff's age, education and work experience could work as a laundry room attendant, a hand packager or a manufacturing helper. Tr. 90-92.

The vocational expert also testified that a person who would be consistently off task for 20 per cent or more of the day and who would consistently miss two or more days of work per month, would be unable to work. Tr. 92.

## V.   ALJ Findings

The ALJ denied benefits at step five, finding that plaintiff was capable of performing work in the national economy. Tr. 29.

The ALJ made the following findings:

1.      The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2.      The claimant did not engage in substantial gainful activity during the period from his amended onset date of April 1, 2010 through his date last insured of December 31, 2011. (20 CFR 404.1571 et seq).

3.      Through the date last insured, the claimant had the following severe impairments: (1) Obesity, with a weight range of 215 to 330, on a 5'10" frame, with related aggravation of degenerative joint disease of the right knee and right ankle fracture in March 2010; and (2) A mental impairment variously diagnosed to include post-traumatic stress disorder, a traumatic brain injury, borderline personality disorder, alcohol abuse and dependence, in remission since April 1, 2010 (20 CFR 404.1520(c)). * * *

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). * * *

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant should no more than

occasionally climb ramps and stairs; but should never climb ladders, ropes, and scaffolds; the claimant should no more than frequently balance, stoop, crouch; should no more than occasionally kneel and should never crawl; the claimant is limited to perform simple, routine and repetitive tasks; the claimant is limited to judgment decisions and work place changes that are consistent with simple, routine and repetitive tasks; and the claimant should have no more than occasional interaction with coworkers and supervisors but should never interact with the general public. * * *

6.      Through the last date insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). * * *

7.      The claimant was born on August 9, 1983 and was 28 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2010, the amended onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)). * * *

Tr. 18-31.

## Analysis

Plaintiff bears the burden of proving disability under the SSA.  Wall, 561 F.3d at 1062 (citing

Flaherty, 515 F.3d at 1071).  Plaintiff is under a disability if he has a severe physical or mental

impairment which prevents him from engaging in any substantial gainful activity, and which is

expected to result in death or to last for a continuous period of at least 12 months.  Thompson v.

Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).   The

Commissioner uses a five-step sequential process to evaluate disability.   20 C.F.R § 404.1520;

Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  In the first three steps, the Commissioner determines whether (1) plaintiff has engaged in substantial gainful activity since the alleged onset, (2) plaintiff has a severe impairment or combination of impairments and (3) the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity.   20 C.F.R. § 404.1520(a)(4)(i)–(iii); see Williams, 844 F.2d at 750-51.  If plaintiff satisfies steps one, two and three, the Commissioner will automatically find him disabled.  If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ must make specific factual findings regarding plaintiff's abilities in three phases.  See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996).  First, the ALJ determines plaintiff's physical and mental residual functioning capacity ("RFC").  Id. at 1023. Second, the ALJ determines the physical and mental demands of plaintiff's past relevant work.  Id. Third, the ALJ determines whether despite the mental and/or physical limitations found in phase one, plaintiff has the ability to meet the job demands found in phase two.  Id.; Henrie v. U.S. Dep't of HHS, 13 F.3d 359, 361 (10th Cir. 1993).  If plaintiff satisfies step four, i.e., if plaintiff shows that he is not capable of performing past relevant work, the burden shifts to the Commissioner to establish at step five that plaintiff is capable of performing other work in the national economy. Williams, 844 F.2d at 751.

Plaintiff first asserts that the ALJ erred in formulating the RFC (1) because the ALJ found moderate difficulties with concentration, persistence and pace but did not include those limitations in the RFC; and (2) because – although the ALJ gave "significant weight" to the state agency doctors' opinions – the RFC did not reflect the doctors' opinions that plaintiff had moderate limitations in maintaining attention and concentration for extended periods.  Plaintiff's Social Security Brief

(Doc. #12) filed October 7, 2015 at 14.  Plaintiff also asserts that the ALJ erroneously failed to consider the VA determination that he is disabled.  Id. at 19.  Finally, plaintiff contends that the ALJ erred in providing little weight to the treating doctor's opinion.  Id.  Because the Court agrees with plaintiff in part, the case must be remanded for further proceedings.

## I.      Residual Functional Capacity

Plaintiff argues that (1) the ALJ did not include her findings of moderate limitations in concentration, persistence and pace in the RFC finding; and (2) although the ALJ gave Dr. Blum's and Dr. Hutson's opinions significant weight, she did not explain why she did not include all of the doctors' limitations in the RFC.  Plaintiff's Social Security Brief (Doc. #12) at 14.  The Court finds no reversible error on these arguments.

Plaintiff argues that the ALJ does not explain how she harmonized the findings regarding plaintiff's limited abilities in concentration, persistence and pace with the RFC, which included no specific limitation for concentration, persistence or pace.  Id. at 14.  Defendant responds that the ALJ translated the impairment findings into work-related limitations.  Brief Of The Commissioner (Doc. #15) filed December 4, 2015 at 4.

It is not always necessary for the ALJ to make specific limitations in the RFC for concentration, persistence and pace.  Vigil v. Colvin, 805 F.3d 1199, 1203-04 (10th Cir. 2015). Moderate limitations, such as plaintiff's, may not require specific functional work-related limitations in the RFC.  Id.  Therefore, the appropriate question is whether the RFC adequately accounts for difficulties in concentration, persistence and pace.  Id. at 1204.

In Vigil, the Tenth Circuit Court of Appeals found that the ALJ adequately accounted for moderate limitations in concentration, persistence and pace by limiting the plaintiff to unskilled work.  Id.  It noted that unskilled work generally requires only the following: (1) understanding,

remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting.  Id. (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).  Similarly, here, the ALJ's limitation to simple, routine and repetitive tasks and to judgment and work changes consistent with simple, routine and repetitive tasks, adequately accounts for plaintiff's limitations. The ALJ did not err by failing to explicitly include limitations in concentration, persistence and pace.

Plaintiff also asserts that in formulating plaintiff's RFC, the ALJ improperly ignored state agency doctors' opinions that plaintiff had limited ability to maintain attention and concentration. Plaintiff's Social Security Brief (Doc. #12) at 14.  Defendant responds that because Dr. Blum's and Dr. Hutson's moderate limitations were contained in Section I of the Mental Residual Functional Capacity Assessment ("MRFCA") form and not in Section III of the form, the ALJ was not required to include the limitation in the RFC assessment.  Brief Of The Commissioner (Doc. #15) at 5-6. Defendant acknowledges, however, that when Section III does not describe the effect of Section I limitations, the Section III narrative may not provide substantial evidence to support the RFC.  Id. at 6.

The Tenth Circuit has held that Section I limitations must be described in narrative format in Section III of the MRFCA.  Carver v. Colvin, No. 14-5056, 600 F. App'x 616, 619–20 (10th Cir. Jan. 20, 2015) (citing POMS DI § 24510.063 B.2).  When a consultant's Section III narrative fails to describe the effect that each of the moderate limitations in Section I would have on claimant's ability, or if the Section III narrative contradicts limitations marked in Section I, the Court cannot properly consider the MRFCA as part of the substantial evidence supporting the RFC finding.  Id

Here, the ALJ cannot rely on the Section III narratives because those narratives did not address the Section I moderate limitations in ability to maintain attention and concentration.   See Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

Therefore, because the narrative failures preclude use of those findings as substantial evidence, the ALJ erred in providing substantial weight to the doctors' RFC findings.  Despite this error, the ALJ's own findings and other record evidence could support the RFC.  Consequently this error, standing alone, does not require remand for reassessment of the RFC.

## II.    VA Disability Determination

Disability findings by other agencies are not binding on the Commissioner but they are entitled to weight and must be considered.   See Baca v. Dep't of HHS, 5 F.3d 476, 480 (10th Cir. 1993) (quoting Fowler v. Califano, 596 F.2d 600, 603 (3d Cir. 1979)).  Although the Tenth Circuit has not articulated what evidentiary weight an ALJ should give another agency's disability findings, it is "beyond dispute" that the ALJ must consider such findings and give them some weight.  Richter v. Chater, 900 F. Supp. 1531, 1539 (D. Kan. 1995).   A passing reference to another agency's disability finding or a perfunctory rejection of it will not suffice.  Id. at 1539.  Rather, the ALJ should consider the disability determination in her evaluation of the evidence and explain what weight she gave to this "important fact."  Id.

Plaintiff argues that the ALJ erred by failing to consider his disability rating from the VA. Plaintiff's Social Security Brief, (Doc. #12) at 19.  Defendant responds that the ALJ mentioned the VA rating more than once.   Brief Of The Commissioner (Doc. #15) at 8.   But the ALJ only mentioned the zero per cent migraine disability rating and noted that plaintiff receives veterans' disability benefits.  Tr. 21, 25.  She never mentioned plaintiff's total disability rating or his PTSD disability rating.   The record contains no indication that the ALJ considered the VA disability

determination.

Remand is required when an ALJ fails to consider the VA disability rating.  Grogan, 399 F.3d at 1262.  The Court may not create post hoc rationalizations to explain the ALJ's treatment of the VA disability determination when that treatment is not apparent from the decision itself.  See Grogan, 399 F.3d at 1263.  On remand, the Commissioner shall obtain and address findings by the VA with respect to any disability ratings received by plaintiff and determine the effect, if any, that those findings have on plaintiff's application for social security disability benefits.  See Zevely v. Barnhart, 94 Fed. Appx. 722, 724; Burroughs v. Astrue, 487 F. Supp. 2d at 1266-67.  The Court expresses no opinion whether any VA disability findings should change the result in this case.

**III.  Opinion Of Treating Psychologist**

Unless she has good cause do to otherwise, an ALJ must give substantial weight to a treating physician's opinion.  Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987).  "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant."  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (quoting Williams, 844 F.2d at 757).  The ALJ must provide specific, legitimate reasons to disregard a treating physician's opinion.  Id.

Plaintiff argues that if the ALJ does not give substantial weight to the treating physician's opinion, she must weigh the six factors in 20 C.F.R. § 404.1527 to determine what weight is appropriate.  The ALJ is not required, however, to expressly weigh all six factors.  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).  The ALJ must merely provide good reasons for the weight given.  Id.

The ALJ gave little weight to the opinion of plaintiff's treating psychologist, Dr. Demark,

because she found that his opinion was "not consistent with underlying treatment notes" and because more than a year had passed between plaintiff's last appointment with Dr. Demark and Dr. Demark's written opinion.  Tr. 11.

Dr. Demark's opinion of plaintiff's limitations is consistent with the treatment records.  In fact, the ALJ's assessment of the notes is at times inconsistent with the record.  The ALJ stated that plaintiff had reported sleeping well.  Tr. at 29.  But on two occasions plaintiff stated that he was getting as little as four hours of sleep a night.  Tr. at 1376, 2024.  According to treatment notes, plaintiff characterized his sleep on those occasions as "pretty good" and "sporadic."  Tr. at 1376, 2024.  Although he had occasional panic attacks, the ALJ noted that plaintiff reported that Klonopin controlled his anxiety.  Tr. at 29.  In fact, in March of 2012, plaintiff reported increased anxiety and panic attacks.  Tr. at 2024.  Further, while the ALJ noted that plaintiff's medications "helped" his concentration and that he was "getting better" at managing his PTSD, the fact that plaintiff showed improvement does not necessarily mean plaintiff had improved to the point that he did not have marked limitations.  Id.  Dr. Demark could reasonably note improvement but still believe that plaintiff showed marked limitations.  Because the ALJ did not provide good reasons for the little weight which she assigned to Dr. Demark's opinion, remand is required.

On remand, the ALJ should fully consider the impact of the VA disability rating on plaintiff's application; reevaluate the weight afforded to Dr. Demark's opinion and provide reasons for the weight given; and consider at that point whether changes to the RFC are warranted.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** for further proceedings in accordance with this memorandum and order.

Dated this 13th day of March, 2017 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge